Scofield, J.,
delivered the opinion of the court:
These cases as consolidated embrace two claims] one arising under the Act February 20,1811 (2 Stat. L., 641), known as the 5 per cent, fund, amounting to $36,439.69; the other arising under the Acts September 28, 1850 (9 id., 519), and March 2, 1855 (10 id., 634), known as the swamp-land indemnity fund, amounting to $7,133.02. There is no contest about these amounts.
*57 The defendants contend that the court has no jurisdiction, under section 1089 of the Be vised Statutes, over so much of the claim as was deposited in the Treasury more than sis years before the petition was filed, and that the remainder of the claim is covered by a counter-claim, consisting of overdue coupons on bonds issued by the claimant.
The amount of the counter-claim and the claimant’s liability thereon are not contested; nor is it denied that the item of $13,602.71 was deposited in the Treasury to the credit of the State more than six years before the petition was filed.
The claimant, however, meets these defenses with the allegation that the funds claimed are trust moneys, to be held for special purposes, at first by the United States and by the State after transfer.
The origin and purpose of the 5 per cent, fund is found in Section Y of the Act February 20,1811 (2 Stat. L., 841), which provides:
“ That five per centum of the net proceeds of the sales of the lands of the United States, after the first day of January, shall be applied to laying out and constructing public roads and levees, in the said State, as the legislature thereof may direct.”
The origin and purpose of the swamp-land fund appears by the Act September 28, 1S50 (9 Stat. L., 519), entitled “An act to enable the State of Arkansas and other States to reclaim the swamp lands within their limits.” This act, after directing the manner of conveying such lands to the States, provides:
“ That the proceeds of said lands, whether from sale or by direct appropriation in kind, shall be applied exclusively, as far as necessary, to the purpose of reclaiming said lands by means of the levees and drains aforesaid.”
Some of the land included in the foregoing' act was purchased from the United States by individuals through mistake of the Land Office. Thereupon the Act March 2,1855 (10 Stat. L., 634), was passed, and provided :
“ That upon due proof by the authorized agent of the State or States, before the Commissioner of the General Land Office, that any of the lands purchased were swamp lands, within the true intent and meaning of the act aforesaid, the purchase-money shall be paid over to the said State or States.”
These statutes indicate very clearly that these two funds are *58 held in trust, to be applied, the one “ to laying out and constructing public roads and levees,” and the other “ to reclaiming swamp lands by means of levees and drains.” (Emigrant Co. v. Wright County, 97 U. S. R., 339; Same v. County of Adams, 100 id., 66; Mills County v. R. R. Co., 107 id., 564; State of Louisiana v. The United States, 22 C. Cls. R., 284.)
Whether the courts have power to enforce this trust against ingenious devices of the State for its diversion, and whether Congress has power to revoke or annul it, are not questions for our consideration. There is no allegation that Congress has attempted to disavow or annul the trust, nor that the State is attempting to misapply the funds. The United States having-executed their part of the trust, by the sale of the lands and by a calculation and separation of the amount belonging to the trust, and by depositing the same in the Treasury to the credit of the State (their successor in the trust), it became the duty of the executive officers temporarily charged with the custody of thqi'unds to hand them over to the succeeding trustee. The credit given to the State, on its bonded indebtedness to the United States, in the Treasury Department was without authority of law. Neither Congress nor the State had given consent to such a misapplication of the funds.
The trust beiug established, it follows that these funds are freed from the counter-claim, and that no part of them is barred by the statute of limitations.
Judgment will be altered in the sum of $43,572.71.